I'm here on behalf of the appellant, Danny Wessels, after a four-day jury trial on a Workers' Compensation Act, the jury in Rock Island County failed to follow the law. And that is why we have asked that the court grant a new trial and why we believe that under the law we were entitled to a new trial because of juror misconduct. The second issue that we are here on appeal is the court's failure to allow into evidence the statements made by Luke Schuck, a managerial employee of Vitran Express, who stated to another employee that the reason why Mr. Wessels was not returning to work wasn't because of the accident, but was because of his pursuit of his workers' compensation. The trial court erred in failing to follow the law set forth in the, and I'll always have trouble saying this name, but it's Petruszczynski v. McClearcorp case for the exceptions to this hearsay rule for the admissions of a party's agent's statements outside a court for proof of the matter asserted. Now that Illinois has adopted the federal rules of evidence, and in particular... We didn't adopt the federal rules of evidence. Well, we have adopted rules of evidence similarly drafted off of the federal rules of evidence. No, we used the same numbering system, but we preserved rules of evidence that already existed. I understand, Your Honor, but the difference in the rule 801D2D in our rule is negligible. It needs the same rule. And in that Petruszczynski v. McClearcorp case, the court has no longer held a party seeking to introduce a statement of an employee of the defendant to the burden of showing that they were acting within the scope of authority of the employer. In Petruszczynski and in the Pelvic v. Walmart case, they held to hold the plaintiff to that type of burden or to hold a party to that type of burden makes it impossible to prove that element. That that becomes basically a self-defeating prophecy because no employer is going to ever authorize its agent to make a statement that's contrary to what they want them to make. So the modern trend has been to allow these statements in. Let me just ask you, and your argument makes sense, but on another level, does the employee that we're talking about, managerial employee, at least have to be within the circle of people who have knowledge about the statements he's making? No, that's not what Petruszczynski states. If you look at that case. So if it's IBM, some guy at an IBM office in India makes a statement about what this employee got fired for something in Chicago, that comes in? Correct. I believe under the modern trend it does. They could come in and explain it away, but to deny the admissibility here is a reversible error, especially in light of the fact that it can affect the outcome of the case. That's a material statement here, Your Honor. Namely, we fired him. They fired him because he was pursuing his workers' comp claim. Interestingly, this same issue arose on summary judgment with respect to statements that Patty Novota heard from Mark Lindhoff, the terminal manager, when they were discussing why Mr. Wessels was not coming back to work. And the trial court on summary judgment followed this case and said Lindhoff's statements were an admission against a party opponent. Now, for some reason during the course of the trial, when we have another managerial employee making the same type of statements that are overheard by Mr. Bill Clark, the trial courts bind. And that's reversible error in this case in light of the fact that it's a causal connection relationship between why he was fired, because that's an element of our proof. She's not allowing in this situation a crucial piece of evidence to our element of proof. For that reason, we believe that we are entitled to a new trial on that issue. As to the juror misconduct, as to that issue, and we're talking about Clark, right? I'm sorry. We're talking about William Clark. Yes. If you look at the record, I believe it's pages 142 through 145. When I called Mr. Clark and I was going off of this testimony, we had a recess with the jury and I ended up doing an offer of proof. The court ruled that I would not be allowed to introduce that into evidence, but Mr. Clark, after I summarized what we expected him to testify to, affirmed that that's what he heard. And that is, I believe, at page 143 in the record, Your Honor. And you're saying that the law that's stated in many cases that the statement has to be made about a matter over which the alleged agent has actual or apparent authority no longer exists? No, it doesn't. Read the Pietruski case. Read the... Pietruski is an appellate court case in the 1st District, correct? Correct, 2003. But also read the Vogis v. Kmart case, the Halleck v. Coastal Building Maintenance case, and the Reintz v. Village of Bridgeview case. And then, also please review the Pavlik v. Walmart case from the 7th Circuit, which these cases then, under the modern trend, recognize that this is the way to allow this evidence in. From the 7th Circuit?  The 7th Circuit, in the Pavlik case, was cited favorably by the Pietruski case, and then I believe was cited also in the... But all three of those cases have also held that the element that required us to prove that the statement was specifically authorized by the employer has been eliminated. And instead focuses on the inquiry of whether the employee's statement's concern matters within the scope of his or her employment. Right. A supervisor knowing that the reasons for termination were not because of the accident, but was because of the pursuit of a workers' compensation claim, and telling an employee that on duty while on the docks, is within the scope of his employment. But don't they still have to show that he had some first-hand knowledge of that because of participation in the decision to terminate him? I don't think so, Your Honor. I think if you review these cases, that doesn't require that element. My understanding of those cases is that what they're eliminating is that it be the formal statement of the company in some way, shape, or form, so that, you know, as long as they're employed by them during this time, and they participated, then it would be considered. I mean, such as, you know, they were at a cocktail party or something, but it still isn't just Joe Schmoe, it's Joe, the manager. No, look at the factual patterns of the Pietruski case, and you will see that the person who made the statements that are critical wasn't participating in the decision-making process at all. Didn't do it at all. He was a low-level supervisor, and he heard it and then repeated it. And therefore, there is no requirement to show that Mr. Shuck, in this situation, quote, participated in the decision or that he had first-hand knowledge of the decision. He was just repeating, basically, probably what he heard. Namely, this was the facts. And that's consistent with what Lindhoff said to Navoda, too, in this case. To have both of the managerial employees at this terminal saying that is substantial in this case and created an unfair advantage to the defendant to have that eliminated from evidence, which is a crucial piece of evidence in this case. As to the juror misconduct issue, the big debate in this case is whether we are basically attacking the method that the jury came to the verdict versus whether the jurors relied on extraneous prejudicial information or any undue influence which was improperly brought to the trier of fact. That's the standard under People v. Holmes, a 1978 Supreme Court decision. And we submit, based on the affidavit of Ms. Ewell, that it was, number one, extraneous prejudicial information, and number two, in the conjunction, that he brought undue influence which was improperly placed on this jury. Remember, it's a two-part. It's in the conjunction. But how do you get to the extraneous part? He applied a different standard. Well, how is that extraneous? You're supposed to follow the law, Your Honor, when deliberating. Well, sometimes the juries do. Sometimes they don't. But the fact is, to be extraneous, this means like something from outside comes in. Well, his own personal assertion that you had to prove this case to 100% certainty. Have you got a case file that says that a juror, given his personal assertion inside a jury room, that you can impeach a verdict with that? I don't have an exact fact pattern like this, Your Honor. I don't think I've ever seen this happen before, and that's one of the reasons why I'm asking for the review of it. But 21.01 of the Illinois Pattern Jury Instructions states that the burden of proof in this type of case is more probably true than not true. And they had those instructions. The affidavit shows that the jurors were never shown the instructions by the jury foreman. And then he stated, I believe he's proved his case, but not to the 100% certainty, and therefore I can never enter a verdict on his behalf. And based on that, a jury that was already 7 to 5 on the first vote in favor of a verdict for the plaintiff immediately switched based on the extraneous evidence. He failed to follow the law. The Smiglis case says that if you have a situation where it's apparent the jury has misunderstood or disregarded evidence or instructions of the court, the court will, upon failure to do substantial justice, set aside the verdict and grant a new trial. There's no dispute in this record that that's what occurred. Let me ask you this. Let's suppose that, I mean, just by way of example, an absurd example maybe, but you got affidavits and the jurors come out and say, you know, the foreman said, forget about all this other stuff. That plaintiff has got beady eyes, and you can't trust anybody with his beady eyes. That's a deliberation. But this is, the law states more probably true than not true, and he's expressly placed into this jury his influence of what he thinks the law should be. Let's assume a different example. You think that doesn't probably happen more often than not, that jurors don't sit back there and talk about what the law ought to be? But if you can show that that's what they did and they didn't follow the law, that's what's improper, and that's why you should consider the affidavit. Let me give you a different example. Let me say we're trying a DUI case solely on the basis of a .08 reading, and at trial, the evidence comes in that it was actually a .02. And for some reason, the trial court lets this thing get deliberated by the jury, and the jury foreman says, well, the statute says and the instruction says if it's .08, then we convict. But I think that anybody who takes a drink and gets behind the wheel is guilty of DUI and convinces all the other jurors that that's the standard. In your scenario, if it was reviewed, it would probably be that the trial should have never gone. It wouldn't have been a jury deliberation if that was the evidence that the jury case never should have gone to the jury. Well, I understand. I'm just saying factually that's the evidence. The law is this, and he won't follow the law in that situation. What's the difference in this situation where under 21.01 of the IPI, it says that the burden of proof in this case is that the standard is more probably true than not true, and we're being held to a burden that's 100% certain. I mean, the problem I have is with your argument is that the law is that we don't interfere with a jury verdict. If anything relates to motive, method, or process by which the jury reached its verdict. So what you've indicated by this affidavit is you've got one person saying they have 100% certainty, and you've got that person claiming they didn't see the jury instructions, although the judge read the jury instructions to them. And so their motive for entering the verdict they entered, and the method by which they did it was following this one juror's recommendation about a standard, and that was the process they used to render their verdict. But we can't overturn a verdict on that basis, can we? I think under Smiglis you can, when you can demonstrate that the method fails to follow the law. See, but that's on the method. It's not an extraneous matter. It was on the method and process that they followed, but in a way that's not been a basis for overturning a jury verdict. I think it's method. I mean, I think it's extraneous, Your Honor, because he brought his own standard of proof into that jury box. He didn't follow 21.01. He followed the standard that he set up himself, 100% certainty. Good afternoon, Your Honors. Please, the court. Counsel. My name is Don Vogel, and I represent the defendant and the appellee, Vitran Express. I'm going to do it in the order you just finished with, and we'll talk about the motive and the method and the process. And so that we're all clear here, what counsel's asking this court to do is make new law. What he wants to do is open the door to allow a court to consider the affidavit of a juror as to the motive, the method, and the process that goes on when that jury is deliberated. There's already a well-established law here that we don't consider those types of affidavits unless it's extraneous, unless it's outside. If the juror brought something from outside into that juror, or there was an outside influence. We cited a bunch of cases that talk about those situations. And the one case that I also cited was Chalmers v. City of Chicago. And that is where the jury in that case held the plaintiff to a beyond a reasonable doubt standard when it should have been clear and convincing evidence. And the court looked at the affidavit and says, well, but that's the motive, method, and process. We cannot go and reverse it based on that affidavit because that's not extraneous. That was not outside. We don't have a situation here where somebody went out and looked at riving blades like we have in the Black and Decker case. Or somebody went out and looked at shoe imprints like there is in the People v. Holmes case. What we have here are jurors who brought their life experiences into that courtroom. And whether they were right or wrong, and I don't know that he said this. I mean, Annie Ewell, the affidavit says he did. Whether they were right or wrong, that's part of the motive, the method, and the process. If that's correct, they didn't follow the jury instructions. Well, but I'm not so sure that they didn't follow the jury instructions. I don't know if that was just his way of convincing her to go his way. I mean, what we have here is we have a juror who claims she started off saying, I'm going for the plaintiff. And then we have the jury foreperson who says something to her. Take her statement as being true. He said, you must be 100% certain. And so she went back his way. She comes into court. She gets pulled by the judge. She says, this is my verdict. She then leaves the courtroom. And now Mr. Fiewer gets a crack at her. And he convinced her to go back the other way. So now we get an affidavit. What Mr. Fiewer wants to do is now let me have a crack at her. So now we've got to go back down before Judge Lestig, bring this juror in, and find out what happened. There's got to be some finality. The US Supreme Court in Kandor said it has to end at some point. There has to be this finality of judgments. And the way we've drawn the line here in the state of Illinois is if it's extraneous, if it's outside the courtroom, if it's their own investigation, if they look up what the standard of proof is, if they bring in an almanac, all the types of cases we cite, then we're going to look at that affidavit. And then we're going to have further proceedings on that. But it is just what occurs in the jury room. It's what these people bring into that jury room. Their own life experiences are not expected to be checked at the door. What they bring into the jury room stays in the jury room. So I think Judge Lestig got it right. She looked at the affidavit. She determined that it went to the motive, the method, and the process. She refused to consider it, and she upheld the verdict. And the last thing that Mr. Kiger tries to do then, he's trying to spin Mr. Frye's statement to say, well, it had to be extraneous, because he certainly didn't get it from within the courtroom. You know, I would assume jurors make mistakes in there all the time. That's part of the process. Again, the Shemansky case, we had a situation where a juror said, I'm familiar with Naperville and drew a map to prove that the defendant could have committed this forgery. They tried to argue the map wasn't accurate. But that was the knowledge she brought in. Whether it was accurate or not, the court said that's still motive, method, and process. So I ask you to let that stand. Judge Lestig was correct. She did not abuse her discretion. She correctly refused to consider that affidavit, and she let the verdict stand on that. The other issue that counsel has raised is the hearsay statement that's attempted to be entered by William Clark as it relates to a statement made by Luke Shuck, who admittedly was a manager. He was the manager of the outgoing loads. But as you noted in your IBM case, and, Justice O'Brien, as you noted also, there still has to be some foundation. I mean, let's remember, Mr. Shuck testified at trial, and when he was asked the question about why do you think he was fired, there was an objection as to foundation, because he had no knowledge. His scope of authority of the company had nothing to do with the decision to terminate this employee. And the Pietruszynski case, I'm giving it my best Polish pronunciation, the Pietruszynski case doesn't say that you get to do an end around on foundation just because it's a party admission. You still have to have some knowledge on the part of Mr. Shuck to have Mr. Clark attribute that statement to the employer. And I don't think the modern trend, which I do believe is the correct standard, deviates from that. It still says that the employee acted within the scope of his authority, and Mr. Shuck was not acting within the scope of his authority when he testified or would have given this hearsay statement about why Mr. Wessels was terminated. Well, I mean, to some extent, I kind of agree with – I mean, certainly no – I agree with Mr. Fiewiger on this aspect of it. I mean, firstly, no employer – I mean, they're going to say that your job is when you walk out of this – let's suppose it passes in a circle, but when you walked outside and started blowing your mouth, you were outside the scope of your employment because your job was to shut up about that out there. And I think that's the traditional approach, and I do think that's wrong. So I think that scope of employment – did he come by the information in the scope of his employment, not did he speak this in the scope of his employment? And I think it's is he coming by the information by the scope of his employment, and he didn't. I think that was the conjecture. Again, he was asked that question when he was on the stand, and it was objected to as a result of foundation. And what Mr. Fiewiger tries to do is say, well, we had another statement by Mr. Lindhoff, which the court considered in the form of an affidavit to defeat our summary judgment, where Mr. Lindhoff – his statement was admitted as a party admission. But Mr. Lindhoff was involved in the decision to terminate Mr. Wessels. So he was within the scope of his authority to make that. He did have the foundational basis to make that statement, and although we disagreed with it when she was considering it, I think Judge Lestine got that one right. And she got this one right, too, because Mr. Shuck did not have the foundation to make that statement. It was his conjecture. So I think she correctly held it out. So I'd say in both instances, Judge Lestine got it right, and I would ask this court to affirm the verdict. Thank you, counsel. Counsel? The last point that Mr. Vogel made, that Mr. Lindhoff was involved in the decision-making process, was totally disagreed by them in the factual presentation of the trial and in the summary judgment standing. They went to painstaking lengths to show that Mr. Lindhoff simply presented the facts to this panel of, I believe, four people, who ultimately then made the decision to terminate Mr. Wessels and went to extreme facts in presenting that to show that Mr. Lindhoff did not participate in the deliberative process at all. But you lost that one, right? What? They lost that one, and you won, right? But the argument... So what's that got to do with Shuck? It has a lot to do based on the Piotrowski case and its progeny that I've cited to the court. We don't have to show that Luke Shuck had anything to do with the deliberative process at all in order to allow this statement from the managerial agent made during the course of his employment into evidence. They can come back in this case and say, Luke Shuck doesn't know anything. He never talked to anybody on the panel who didn't talk to Lindhoff about this. He's just blowing smoke, and this is... And it's a critical fact in this case. Namely, why was he fired? He was fired because Shuck testified or would have testified based on the statement that it was because he was pursuing his workers' comp claim. Is there any foundation at all that Shuck knew what he was talking about? Or he got worried? Oh, yeah. I mean, Shuck was participating in the investigation of this accident. Shuck was responsible for the load on this, which was, in his admission, poorly loaded because there was no bracing. He also was told by Mark Lindhoff when he was going to diagram for the state trooper how this pup trailer was loaded to stop it and shut off. Those are facts that show that he has knowledge as to what they're doing here. And that's why it's important not to hold me to the standard that the prior cases did, namely that we have to show that the employer authorized him to make this statement, but rather follow the modern trend and follow Pietruszki and all the other cases that we've cited and allow the statement in. And that could have swayed the day here, especially with respect to a jury that was 7-5 in favor of my client initially. Why Judge Lestine didn't apply the legal standard to Shuck's statement as a managerial agent but applied it to Lindhoff is a question I can't answer for you, but I believe that it's reversible error. Thank you. Thank you, counsel. The court will take this case under advisement and render a decision at the dispatch post-haste, and we will take a panel change.